UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DREW DADDONO, as personal
representative on behalf of the Estate
of STEPHANIE MARIE MILLER,

    Plaintiff,

v.                                              CASE NO. 8:21-cv-315-WFJ-JSS

KURT A. HOFFMAN as SHERIFF OF
SARASOTA COUNTY, *et al.*,

    Defendants.
_____/

## ORDER

Before the Court is Defendant Sarasota County Sheriff's motion to dismiss the complaint (Dkt. 37) and Plaintiff's response (Dkt. 49). After careful review of the allegations of the complaint (Dkt. 1) and the applicable law, the Court concludes the motion should be denied.

**ALLEGATIONS CONCERNING SHERIFF OF SARASOTA COUNTY**

On November 10, 2018, Sarasota County Sheriff's officers arrested Stephanie Marie Miller on an outstanding warrant.[1]  Dkt. 1 ¶ 3.  The Sarasota County jail officials booked Ms. Miller and later transferred her to the Charlotte

---

[1] The Sheriff's Office of Sarasota County detained Ms. Miller on a misdemeanor possession of marijuana and related failure to appear charges.  Dkt. 1 ¶ 2.

County jail on November 14, 2018, where she stayed through November 30, 2018. *Id*. ¶¶ 3, 30.  After her release from Charlotte County jail, she convalesced at her mother's home.  *Id*. ¶ 56.  On December 9, 2018, Ms. Miller was admitted to Bayfront Medical Center in Port Charlotte, Florida, where she died the next day. *Id*. ¶ 57.

Ms. Miller's personal representative, Drew Daddono, brings this multi-count action against the sheriffs of both Sarasota and Charlotte counties, Armor Correctional Health Services, Inc., Corizon Health, Inc. (the two private companies contracting with the counties, respectively, to provide healthcare to jail inmates), and various medical staff of the two companies.  Dkt. 1 ¶ 16–18.  Three of the four claims against Sarasota County Sheriff Hoffman[2] sound in federal civil rights constitutional violations under 42 U.S.C. § 1983 and the Fourteenth Amendment, and the remaining claim cites Florida statutory law prohibiting the neglect, abuse, and exploitation of a vulnerable adult.  *Id*. at 31–37, 42–46, 67–69, 77–83.  Each of these four counts incorporates by reference portions of the common, general allegations: paragraphs 1–35 and 56–66.  The allegations pertinent to the four claims for relief set forth the following factual scenario.

---

[2] Sheriff Thomas A. Knight is the former sheriff and, as such, is automatically replaced by the present office holder, Sarasota County Sheriff Kurt A. Hoffman.  Dkt. 37 at 2 n.1; Fed. R. Civ. P. 25(d) ("The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name."); *Linares v. Armor Health Sources*, No. 6-61127-Civ-Dim, 2008 WL 11406151, at *1 (S.D. Fla. Feb. 21, 2008) (citing Rule 25(d) and substituting sheriffs).

Around 9:00 p.m. on November 10, 2018, a nurse at the Sarasota County jail conducted intake health screening on Ms. Miller. Dkt. 1 ¶ 30. Ms. Miller disclosed her need to take Doxycycline and Coumadin and the nature of her conditions based on a recent hospitalization.[3] *Id*. Ms. Miller told the nurse her endocarditis had returned and needed treatment. *Id*. A supervising physician at the jail was verbally or telephonically contacted at around 9:30 p.m. *Id*. Ms. Miller then signed a release of her records from Sarasota Memorial Hospital. *Id*.

Two and a half hours later at 12:04 a.m. on November 11, she told a nurse (Ms. Lehman) that she was supposed to take Coumadin for the "many clots she has had." Dkt. 1 ¶ 31. At 2:55 p.m. another nurse (Ms. Sherman) noted she was instructed by medical personnel to wait for the records from Sarasota Memorial. *Id*. Less than an hour later Nurse Sherman verified Ms. Miller's medication from "bottles in property." *Id*. There is no record that Ms. Miller took either Coumadin or Doxycycline (or appropriate alternatives) on November 11. *Id*.

On November 12 after 9:50 p.m., jail medical staff ordered Doxycycline, but there is no record of Ms. Miller taking it. Dkt. 1 ¶ 32. On November 13, medical staff administered Doxycycline to Ms. Miller for the first time, and again on November 14 at 9:30 a.m. *Id*. ¶¶ 33, 34. There is no evidence that Coumadin was

---

[3] On October 29, 2018, the Sarasota Memorial Hospital discharged Ms. Miller after more than 55 days of in-patient care. Dkt. 1 ¶ 29. The discharging physicians prescribed Doxycycline and Coumadin for treatment of a host of conditions including venous embolism and endocarditis. *Id*.

ever given to Ms. Miller at Sarasota County jail. *Id*. Upon transfer to Charlotte County jail on November 14, the transfer summary noted Ms. Miller's current medication included Doxycycline but not Coumadin. *Id*. ¶ 35. No medications were ordered for transfer by Sarasota County jail or sent from there to Charlotte County jail. *Id*.

Plaintiff alleges it was the policy, practice, custom and/or procedure of the Sarasota County Sheriff, and others who have final decision-making authority, to refuse or delay 1) providing adequate and necessary medical health screening, *etc.*, and care to pre-trial detainees and 2) providing necessary prescription medications to pre-trial detainees. Dkt. 1 ¶¶ 58, 59. Plaintiff alleges these policies, practices, customs, and procedures were deliberately indifferent to "known serious medical and mental health needs of [Ms. Miller] and other pretrial detainees" in the custody of Sarasota County jail. *Id*. The policies, practices, customs, and procedures "governing the medical health screening, assessment, evaluation, monitoring, treatment, intervention, referral, and care of pre-trial detainees . . . were deliberately indifferent" to the constitutional due process rights of Ms. Miller and other pre-trial detainees. *Id*. ¶ 60. The Sarasota County Sheriff "promulgated and maintained a de facto unconstitutional custom, policy, or practice of permitting, ignoring, and condoning and/or encouraging officers, deputies, nurses, physicians,

medical personnel, and other employees or agents to fail and/or refuse to provide necessary medical treatment." *Id*. ¶ 113.

## DISCUSSION

The Sarasota County Sheriff seeks dismissal based on the sole ground the complaint fails to demonstrate that any official policy or custom caused any constitutional injury as required by *Monell v. Dep't of Social Servs*., 436 U.S. 658, 690–91 (1978). Dkt. 37 at 2, 3, 8, 9. In ruling on a motion filed pursuant to Rule 12(b)(6), Fed. R. Civ. P., this Court must accept Plaintiff's factual allegations, not legal conclusions, as true and draw all reasonable inferences from those facts in the light most favorable to Plaintiff.[4]

### ***Official policy, custom, practice***

Defendant first argues that Plaintiff has failed to identify a policy or custom that caused Ms. Miller's injury. To establish official capacity liability of a sheriff, which is municipal liability, in a § 1983 action, a policy, custom, or practice must have caused the deprivation of civil rights. *Monell,* 436 U.S. at 693–94; *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). Liability under *Monell* requires a

---

[4] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) (requiring plausibility); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (allowing reasonable inferences to be drawn from factual content); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (stating legal conclusions "couched" as facts need not be accepted as true); *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003) (same).

formally adopted policy statement or ordinance, or a governmental custom that has not been formally approved. 436 U.S. at 690–91.

As recited above, the complaint satisfactorily articulates the policy, custom, or practice that allegedly led to Ms. Miller's death. Specifically, the jail's practice was to refuse or delay the administration of medicine and treatment, to fail or refuse referral to appropriate healthcare professionals and facilities, and to fail or refuse to take adequate time to properly house and classify inmates. Dkt. 1 ¶¶ 58–60, 72, 113. The Court notes, however, that the alleged facts do not exactly comport with the alleged policy of refusing or failing to give medications. Here, one of the two requested medications was actually administered at least half the time, albeit somewhat delayed.

### ***Causation (proximate cause)***

Apart from an articulated policy, Defendant argues the absence of any causal connection between what happened at Sarasota County jail and Ms. Miller's death four weeks after she left. Dkt. 37 at 6, citing *Troupe v. Sarasota Cnty.*, 419 F.3d 1160, 1165 (11th Cir. 2005). The complaint alleges Ms. Miller did not receive Doxycycline on November 10, 11, or 12; yet, the last two days, November 13 and 14, she did. Ms. Miller's transport papers of November 14 noted she was taking Doxycycline but were silent as to Coumadin. According to the complaint,

Coumadin was never administered in Sarasota County jail during her four-night stay, nor was it disclosed as a prescribed drug to Charlotte County jail.

Although not articulated by either party, the timeline poses a hurdle for Plaintiff. The relatively short time Plaintiff spent in Sarasota County (four nights), the particular drugs given and not given while there (Doxycycline given twice, Coumadin none), and the passage of time between her treatment and her death (four weeks) may very well destroy causation. Causation under § 1983 requires proof of connection between the application of the unconstitutional policy and the constitutional deprivation. *Buckman v. Halsey*, No. 3:18-cv-435-TJC-MCR, 2020 WL 5076695, at *3-4 (M.D. Fla. Aug. 26, 2020) (citing *LaMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir. 1993)). The policy or custom must be more than a mere contributing factor to Ms. Miller's demise; it must be the legal, proximate cause, the "moving force." *Jackson v. Sauls*, 206 F.3d 1156, 1168 n.16 (11th Cir. 2000) (discussing in the context of § 1983 traditional tort causation principles and reasonable foreseeability); *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997) (holding policy must be "moving force" causing constitutional violation); *Barnett v. MacArthur*, 956 F.3d 1291, 1296 (11th Cir. 2020) (same). The Court refrains, however, from deciding this issue on a motion to dismiss and instead will leave the determination of causation, including intervening causes, for resolution after further factual development. *See Hunt v. Gualtieri*, No.

8:16-cv-509-VMC-AAS, 2016 WL 7034412, at *4-5 (M.D. Fla. Dec. 2, 2016) (permitting complaint to proceed to summary judgment against sheriff because policy or custom is generally fact-based).

### *Other considerations*

Defendant recognizes that more than a single, isolated incident of unconstitutional conduct is required to establish liability. Dkt. 37 at 6, citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–824 (1985). To establish liability based on a single incident of unconstitutional actions, the plaintiff must show the final policymaker either ratified the unconstitutional conduct or delegated policymaking authority to a subordinate whose decisions are not subject to further review. *Andrews v. Marshall*, No. 19-12293, 2021 WL 387442, at *6 (11th Cir. Feb. 3, 2021) (citing *Hoefling v. City of Miami*, 811 F.3d 1271, 1279–81 (11th Cir. 2016) and *Mandel v. Doe*, 888 F.2d 783, 792–94 (11th Cir. 1989)). The complaint does not reference ratification or delegation.

Plaintiff contends, however, that the complaint alleges more than a single, unconstitutional injury. Even so, similar events must be shown to substantiate the existence of the policy or custom. *See Hunt*, 2016 WL 7034412, at *4 (citing *Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005)). In this respect, the complaint alleges the policy or custom violated the constitutional rights of Ms. Miller "and other pre-trial detainees." Dkt. 1 ¶¶ 58, 59, 60. In *Hunt*,

the district court found sufficient the allegations of the alleged policy as "not uncommon" and "happened numerous times" prior to the plaintiff's death. *Id*. As in *Hunt*, this Court will permit the case to move forward but cautions Plaintiff that proof of a "widespread" and "persistent" policy is required. *Id*.

Finally, Defendant argues the allegations establish liability based on a theory of *respondeat superior*, which is not permitted under § 1983. *See* Dkt. 37 at 6, citing *Patrick v. Floyd Med. Ctr.*, 201 F.3d 1313 (11th Cir. 2000). Specifically, Defendant takes issue with the allegation that the sheriff is "responsible for the administration, operation, and supervision of the Sarasota County Jail/detention system." *See* Dkt. 1 ¶ 20. This allegation, however, does not foreclose *Monell* liability; it simply designates the sheriff as one of the final policymakers for purposes of *Monell*. Dkt. 49 at 5; *see Thomas ex rel. v. Roberts*, 261 F.3d 1160, 1172 (11th Cir. 2001) (noting *Monell* liability may be imposed for single decision made by official who is final policymaker), *cert. granted, judgment vacated sub nom*. *Thomas v. Roberts*, 536 U.S. 953 (2002), *opinion reinstated*, 323 F.3d 950 (11th Cir. 2003).

Accordingly, Defendant Sarasota County Sheriff's motion to dismiss (Dkt. 37) is denied with the exception of the claims for punitive damages.[5] All references to punitive damages against this Defendant are deemed stricken.

---

[5] Plaintiff concedes the sheriff cannot be subject to punitive damages. Dkt. 49 at 2 n.1.

Defendant shall file an answer and defenses within fourteen (14) days. The Clerk is directed to conform the docket to reflect the substitution of Sarasota County Sheriff as Kurt A. Hoffman in place of former Sheriff Knight.

**DONE AND ORDERED** at Tampa, Florida, on April 9, 2021.

WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

**Copies furnished to**:
Counsel of Record