# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

DREW DADDONO, as Personal
Representative on behalf of the Estate of
STEPHANIE MARIE MILLER,

    Plaintiff,

v.                                                          Case No. 8:21-cv-315-WFJ-MRM

KURT A. HOFFMAN as SHERIFF
OF SARASOTA COUNTY, *et al.*,

    Defendants.
_____/

## ORDER

Before the Court is Plaintiff's Motion to Exclude Defendants' Expert Dr. Chad Zawitz (Dkt. 140) and Defendants' Response (Dkt. 145). After careful consideration of the submissions of the parties, the Court concludes the motion should be denied.

## PERTINENT FACTS

Dr. Chad Zawitz is a board-certified infectious disease and internal medicine physician. Dkt. 145-1 ¶ 2. He is an attending physician at Cook County Jail in Chicago, holds numerous professorial positions at universities in the Chicago area, and is a certified correctional healthcare professional. *Id*. In December 2019, a headhunter agency (MedLeague) contacted Dr. Zawitz about performing a

medical-legal review. *Id.* ¶ 4.[1]  He gave the agency his CV, fee schedule, and W9. *Id.*  He learned later that the medical care review pertained to Stephanie Miller. *Id.*

On February 25, 2020, Dr. Zawitz spoke on the telephone twice with Jacob Slotin, one of the attorneys for Plaintiff. *Id.* ¶ 5.  Dr. Zawitz avers he spoke to Mr. Slotin regarding his qualifications and experience and provided him with his CV, fee schedule, and W9. *Id.*  He declares he was not retained by and did not receive any medical records to review from either MedLeague or Plaintiff's counsel. *Id.* ¶ 5, 8, 11.[2]  He avers that concerning the two conversations of February 25, he took no notes—his custom was to take notes during substantive conversations regarding medical-legal reviews. *Id.* ¶ 7.  He did "not formulate or offer any opinions to anyone from Plaintiff's counsels' offices or MedLeague about Stephanie Miller's case." *Id.* ¶ 12.

Emails provided by Plaintiff confirm there were two conversations on February 25, 2020.  Dkt. 140-2; Dkt. 140-4.  Plaintiff's version of the substance of the conversations, however, differs.  Mr. Slotin avers that in the first conversation, he explained the facts of the case to Dr. Zawitz. Dkt. 140-3 ¶ 7.  He states that Dr.

---

[1] *See also* Dkt. 140-1 (email from MedLeague to an individual of Plaintiff's law firm about Dr. Zawitz).

[2] Dr. Zawitz avers he never received a retainer or payment from either Plaintiff's counsel's offices or from MedLeague.  Dkt. 145-1 ¶ 9.  He did not request a retainer or submit any invoices regarding Stephanie Miller's care. *Id.*  Dr. Zawitz swears he did not do any work on behalf of Plaintiff's counsel or MedLeague on Stephanie Miller's case. *Id.* ¶ 10.

Zawitz and he agreed upon the amount of the retainer and the hourly rate. *Id*. Mr. Slotin swears that he:

> shared additional information about counsel's views of the strengths and weaknesses of each parties' position, claims, and defenses and evaluation as to the evidence as it pertained to each, counsels' legal theories, and strategies and defenses thereto, including all that applied to the Sarasota County Sheriff's Office, Armor Correctional Health Services, Inc. and its staff.

*Id*. As to the second phone call, Mr. Slotin claims he again explained Plaintiff's "counsel's views of the strengths and weaknesses of each parties' position, claims, and defenses and evaluation as to the evidence as it pertained to each, counsels' legal theories, and strategies and defenses thereto." *Id*. ¶ 10.

On June 3, 2020, Dr. Zawitz informed MedLeague that he was unable to accept any medical-legal reviews due to the COVID-19 pandemic. Dkt. 145-1 ¶ 6. On June 5, 2020, Mr. Slotin learned from co-counsel Mr. Dallas LePierre that Dr. Zawitz would be unable to provide expert witness services in Ms. Miller's case. Dkt. 140-5. Mr. Zawitz recommended Dr. Harish Moorjani, whom Plaintiff's counsel retained in this case. *Id*.; Dkt. 140 at 3.

When Defendants retained Dr. Zawitz in January 2022, they assert they did not know about any prior discussions between Plaintiff's counsel and Dr. Zawitz. Dkt. 145 at 3. Defendants served their expert disclosures on January 31, 2022. *Id*. at 11. Plaintiff filed this motion to disqualify Dr. Zawitz almost four months later—on May 24, 2022. Dkt. 140. Plaintiff contends a confidential relationship

3

existed with Dr. Zawitz and confidential information was provided to Dr. Zawitz, which created a conflict of interest when Dr. Zawitz "switched side[s] in this litigation to provide expert services to Defendants." Dkt. 140 at 6.

## APPLICABLE LAW

A district court possesses inherit power to disqualify an expert witness. *Koch Ref. Co. v. Jennifer L. Boudreaux M/V*, 85 F.3d 1178, 1181 (5th Cir. 1996) (citation omitted). The power "derives from the necessity to protect privileges which may be breached when an expert switches sides, and from the necessity to preserve public confidence in the fairness and integrity of judicial proceedings." *United States v. Thaller*, No. 12-22445-Civ-Lenard/Seltzer, 2016 WL 6441548, at *14 (S.D. Fla. Nov. 1, 2016) (quoting *Larson v. Rourick*, 284 F. Supp. 2d 1155, 1156 (N.D. Iowa 2003)).[3] "Side-switching" is "where a party calls an adversary's former expert witness to testify against the adversary." *Kerns v. Pro-Foam of S. Ala., Inc.*, 572 F. Supp. 2d 1303, 1309 n.8 (S.D. Ala. 2007). Side-switching is also described as "testimony against a party's interest by an expert witness formerly retained by that party." *Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1444 (11th Cir. 1998). There is no "blanket rule or policy" against side-switching. *Id.* at 1445.

---

[3] *See also Glasser v. Hilton Grand Vacations Co.*, No. 8:16-cv-952-T-27AAS, 2017 WL 3584930, at *2 (M.D. Fla. July 24, 2017) (quoting *Thaller*); *Beyel Brothers, Inc. v. EMH, Inc.*, No. 2:19-cv-14392-Marra, 2022 WL 1913516, at *1 (S.D. Fla. Apr. 14, 2022) (quoting *Glasser*).

Factors to be analyzed in determining whether disqualification of an expert is appropriate include: "(1) whether the other party had a confidential relationship with the expert; (2) whether it was objectively reasonable for the other party to believe that it had such a relationship; and (3) whether the other party did, indeed, disclose confidential information to the expert." *In re: Deepwater Horizon Belo Cases*, No. 3:19-cv-963-MCR-GRJ, 2021 WL 8015819, at *2 (N.D. Fla. Dec. 23, 2021); *NXP B.V. v. Rsch. in Motion, Ltd.*, No. 6:12-cv-298-Orl-22TBS, 2013 WL 12158602, at *2 (M.D. Fla. Mar. 14, 2013). "Additional considerations include policy and fairness, such as the availability of an alternative expert witness and, when the assessment is made at late stages in the litigation, the potential disruption to the judicial proceedings." *Glasser v. Hilton Grand Vacations Co.*, No. 8:16-cv-952-27AAS, 2017 WL 3584930, at *2 (M.D. Fla. July 24, 2017) (internal quotation marks, brackets, and citations omitted).

The party seeking disqualification bears the burden "of establishing both the existence of confidentiality and its non-waiver." *Glasser*, 2017 WL 3584930, at *2 (citing *Thaller*, 2016 WL 6441548, at *15 and *In re Androgel Antitrust Litig. (No. II)*, No. 1:09-MD-2084-TWT, 2011 WL 1882516, at *3 (N.D. Ga. May 17, 2011); *English Feedlot, Inc. v. Norden Labs., Inc.*, 833 F. Supp. 1498, 1501–02 (D. Colo.

1993).[4]  Disqualification of an expert witness is a "drastic remedy" and rarely granted.  *See Koch*, 85 F.3d at 1181 (citations omitted); *Glasser*, 2017 WL 3584930, at *2 (citing *Rhodes v. E.I. Du Pont De Nemours & Co.*, 558 F. Supp. 2d 660, 664 (W.D. W.Va. 2008)); *Murray Energy Corp. v. McCarthy*, No. 5:14-cv-39, 2016 WL 3390517, at *2 (N.D. W.Va. June 17, 2016).  Courts should be particularly careful about disqualifying those experts who possess useful, specialized knowledge and are few in number.  *Koch*, 85 F.3d at 1183 (citing *English Feedlot*, 833 F. Supp. at 1504–05).  "[I]f experts are too easily subjected to disqualification," attorneys and their clients may manufacture an "inexpensive relationship with potentially harmful experts solely to keep them" from being used against them by the opposing side.  *Id.* at 1083 (citation omitted).

## DISCUSSION

To establish disqualification of Dr. Zawitz based on conflict of interest, Plaintiff carries the burden of showing that (1) a confidential relationship existed between them, (2) it was objectively reasonable for Plaintiff to believe such a relationship existed, and (3) confidential information was, in fact, disclosed to Dr. Zawitz by Plaintiff.  If Plaintiff can prove the expert "switched sides," then disqualification is favored.  On the other hand, if the expert possesses specialized

---

[4] *See also Koch*, 85 F.3d at 1181; *Goldman v. Bracewell & Patterson, L.L.P.*, No. 6:04-cv-725-Orl-18JGG, 2005 WL 5960357, at *1 (M.D. Fla. May 9, 2005) (citing *English Feedlot*).

knowledge in a particular area and such experts are scarce, policy militates toward permitting the relationship to continue between Defendants and Dr. Zawitz.

### *Has Plaintiff established a confidential relationship existed with Dr. Zawitz?*

A written agreement is not definitive of whether a confidential relationship exists. There are instances where, despite the existence of a formal contract, little or no confidential information has been disclosed and disqualification is not warranted. *See Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1094 (N.D. Cal. 2004) (citing *Paul v. Rawlings Sporting Goods Co.*, 123 F.R.D. 271, 278 (S.D. Ohio 1988)). Conversely, situations exist where confidential information has been disclosed, although the parties' agreement has not been reduced to writing. *See id.* (citing cases).

Here, Plaintiff cannot identify or produce a confidentiality agreement executed by either party in this case. Dr. Zawitz cannot recall or find a copy of any such agreement with Plaintiff. Plaintiff argues that Dr. Zawitz advised Mr. Slotin that he would provide expert services for Stephanie Miller's case. Plaintiff argues the follow-up email (from Mr. Slotin to Dr. Zawitz) and the written agreement and fee schedule (sent by Dr. Zawitz to Mr. Slotin) confirm the oral contract. The Court disagrees. The emails do not confirm an agreement. Mr. Slotin simply asked Dr. Zawitz to forward his fee schedule and typical contract. There is no email confirming that Dr. Zawitz was retained and would provide expert services

7

on behalf of Plaintiff. The exchanged emails and the documents provided by Dr. Zawitz are insufficient to solidify a confidential relationship.

In addition to the absence of a written agreement, other factors militate against finding a confidential relationship. Dr. Zawitz was never provided medical records for review. He was never paid for any work in this case. He never formulated any opinions on the medical care. The total sum of "meetings" includes two telephone conversations on February 25, 2020. No invoice was sent for those conversations. Contrary to Dr. Zawitz's own practices upon accepting a case, he did not take notes, keep a time log, or submit an invoice. Assuming he acted in conformity with his customary procedures, no relationship was formed or existed. Any ambiguities regarding whether there was a confidential relationship between an attorney and an expert should be resolved against the attorney claiming such a relationship existed. *De Palo v. Ludlam Retail Assocs., Ltd.*, No. 13-20323-Civ-Martinez/McCaliley, 2013 WL 12304736, at *2 (S.D. Fla. Sept. 9, 2013) (citation omitted). The Court finds Plaintiff failed to establish a confidential relationship.

### ***Was it objectively reasonable for Plaintiff to believe a confidential relationship existed with Dr. Zawitz?***

Plaintiff relies on the same submissions to answer this second question—the emails and two telephone conversations of February 25. Dkt. 140-2; Dkt. 140-3 ¶ 7. The first email of February 25 was sent after the first telephone conversation.

8

In the first email, Mr. Slotin requests a "current CV, Fee Agreement, and W9 in advance of your initial review." Dkt. 140-2. Dr. Zawitz provided these documents. Dkt. 145-1 ¶ 5. Mr. Slotin avers that during the first telephone conversation, which preceded the email requesting a fee agreement, Dr. Zawitz "agreed to provide [expert] service[s] for a specific retainer and hourly rate, a rate to which I agreed verbally." Dkt. 140-3 ¶ 7. Dr. Zawitz does not agree and avers he "was not retained." Dkt. 145-1 ¶ 5. In any event, Plaintiff does not contend that any confidential information regarding the facts of the case was discussed in the initial conversation and therefore it was not objectively reasonable on the part of Plaintiff to believe a confidential relationship was established during the first conversation.

It is also not objectively reasonable to believe the follow-up email asking for documentation from Dr. Zawitz created a confidential relationship. By Mr. Slotin's own words, Dr. Zawitz was to provide these documents "in advance" of his "initial review." Dkt. 140-2. Consequently, any established confidential relationship existing after the first conversation is belied by this email.

As to the second conversation of February 25, Mr. Slotin contends confidential information was conveyed. Whether Plaintiff has met the burden of showing disclosure is addressed in the answer to the next question.

**<u>Has Plaintiff made a showing that confidential information was exchanged?</u>**

Even assuming that both a confidential relationship and an objectively reasonable belief existed, Plaintiff has failed to show that confidential information was disclosed. Confidential information is information "of either particular significance or [that] can be readily identified as either attorney work product or within the scope of the attorney-client privilege." *Hewlett-Packard*, 330 F. Supp. 2d at 1094; *Rawlings Sporting Goods*, 123 F.R.D. at 279. Confidential information includes "discussion of the [retaining party's] strategies in the litigation, the kinds of experts [the party] expected to retain, [the party's] views of the strengths and weaknesses of each side, the role of each of the [party's] witnesses to be hired, and anticipated defenses." *Koch*, 85 F.3d at 1182 (citing *Mayer v. Dell*, 139 F.R.D. 1, 4 (D.D.C. 1991)).

"The expert disqualification standard must be distinguished from the attorney-client relationship because experts perform very different functions in litigation than attorneys." *English Feedlot*, 833 F. Supp. at 1501. Attorneys are advocates; experts are sources of information and opinions. *Id*. Many of the communications between a client and an expert are not privileged. *Id*. Communications between counsel and experts do not carry the presumption that confidential information was exchanged. *Deepwater Horizon*, 2021 WL 8015819, at *3 (citing *Rawlings Sporting Goods*).

10

Mr. Slotin avers in a conclusory fashion that he shared legal theories, defenses, and the strengths and weaknesses of Plaintiff's case with Dr. Zawitz. Dr. Zawitz avers Mr. Slotin did not reveal any confidential information, and if he did so, Dr. Zawitz has no recollection of such information. Plaintiff has not sought to provide any evidence or submissions for *in camera* review. Without more, this Court cannot assume that Mr. Slotin disclosed confidential information to Dr. Zawitz. *See Androgel*, 2011 WL 1882516, at *4 (denying motion to disqualify experts partly because general and vague allegations such as the attorney's views on the strength and weaknesses of the case was not sufficiently specific to establish disclosure of confidential information).[5] The recitation in lead counsel's declaration of generalized language, in an apparent attempt to meet the threshold espoused in case law, is not sufficient to carry Plaintiff's burden of proof.[6]

### ***Do policy and fairness considerations weigh in favor of disqualification?***

Dr. Zawitz possesses specialized knowledge in the field of infectious disease and internal medicine, specific to the incarcerated care setting. There are a limited number of physicians with these certifications and credentials. Dr. Zawitz

---

[5] *See Beyel Brothers* 2022 WL 1913516, at *2–3 (denying motion to disqualify expert because plaintiff failed to meet its evidentiary burden that confidential information had been disclosed); *Deepwater Horizon*, 2021 WL 8015819, at *4 (denying motion to disqualify expert, finding "in the complete absence of documentation" the drastic remedy of disqualification could not be imposed).

[6] Additionally, none of the emails provided by Plaintiff contain confidential information or indicate any confidential information was exchanged. As noted by Defendants, medical records of the injured party are discoverable in this case.

informed MedLeague in June 2020 that he declined to take any medical reviews based on the pandemic. Dkt. 145-1 ¶ 6. Thereafter, he recommended to Mr. LePierre and Mr. Slotin that Dr. Harish Moorjani was the only other physician he knew with similar expertise. *Id.*[7] Dr. Moorjani is the physician retained by Plaintiff in this case.

Granted, there is no evidence or contention that the relationship was initially formed to preclude Dr. Zawitz from acting as Defendants' expert. And skilled experts in medical care in the prison setting are not abundant, which supports denying disqualification. *Cf. Glasser*, 2017 WL 3584930, at *4 (finding that although suitable experts for plaintiff were not "few and far between," they were all "defense" experts). Balancing all of the factors in this case, the Court finds that policy and fairness warrant denying disqualification.

Accordingly, Plaintiff fails to show that a confidential relationship existed, that it was objectively reasonable to conclude a confidential relationship with Dr. Zawitz existed, or that any relevant confidential or privileged information was disclosed. This is not a case of an expert switching sides. In fact, Plaintiff waited four months after learning the identity of Defendants' expert to move for his disqualification. Policy and fairness considerations weigh heavily in favor of

---

[7] "The best person I can think of is Dr. Harish Moorjani in NY prison system. He is ID [Infectious Disease], decades of prison work, and very very smart." Dkt. 140-5.

allowing Dr. Zawitz to continue as Defendants' expert. This case is set for mediation July 26, 2022, and jury trial in December. Any potential harm would be suffered by Defendants at this late stage.

It is therefore **ORDERED AND ADJUDGED** the motion to exclude Defendants' expert Dr. Chad Zawitz (Dkt. 140) is denied.

**DONE AND ORDERED** at Tampa, Florida, July 18, 2022.

_____
WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

**COPIES FURNISHED TO:**
Counsel of record